The United States *vs.* John H. Thompson, and others, Creditors of McFreely & Hopper.

*Payment and Satisfaction.*

A deputy collector of Internal Revenue for the First District of Maryland, entrusted to a certain firm revenue stamps for sale, and endorsed to them for collection certain checks which he had received from various persons for income taxes and licenses. The firm sold the stamps, collected the checks, and deposited the money in bank to their own credit, with the knowledge and consent of the deputy collector, and under a promise to pay it to him when required. On a settlement between the firm and the deputy collector, it appearing that they owed him the sum of $2,537, they gave him their check on a Baltimore bank, for $3,000, which included the above sum, and also a sum due to the collector individually. This with other checks and current notes were taken by the deputy collector to the National Exchange Bank, and he obtained on their credit from the bank a certificate of deposit for the whole amount, payable to the order of the Treasurer of the United States, to whom it was duly remitted—it was received by him, paid by the bank, and the amount thereof duly credited on the account of the collector of the First District, in the office of Internal Revenue in Washington. Some days afterwards the $3,000 check of the firm was protested; subsequently, on its payment by the collector, it was returned to him by the bank, and he returned it to the firm, having first received from them their note, with sureties, for $2,537, the sum due the United States, and payment of the difference between the note and check. The firm became insolvent, and in the distribution of their assets, the United States claimed to be a preferred creditor for the sum of $2,537, with interest. HELD:

That the claim of the United States against the firm, could not be allowed, as it had been fully satisfied by the payment of the certificate of deposit of the National Exchange Bank, to the Treasurer of the United States.

APPEAL from the Circuit Court for Queen Anne's County, in Equity.

This was an appeal from an order of the Circuit Court ratifying the auditor's account which rejected the claim of the United States. The facts of the case will be found sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MAULSBY, GRASON, MILLER and ALVEY, J.

*A. M. Rogers,* for the appellant.

No appearance for the appellees.

MILLER, J., delivered the opinion of the Court.

The proceedings in this cause may be regarded, so far as the decision of the question presented by this appeal is concerned, as having been instituted for the purpose of distributing amongst their creditors the assets of the insolvent firm of McFreely & Hopper. The claim of the appellants, the rejection of which, as entitled to priority over all others, is the only matter now before us for review, appears from the evidence in support of it to rest upon facts substantially as follows:

John H. Thompson, a deputy collector of Internal Revenue for the First District of Maryland, entrusted to this firm revenue stamps for sale, and also endorsed to them for collection checks he had received from various parties for income taxes and licenses. They sold the stamps, collected the checks and deposited the money from time to time in bank to their own credit, with the knowledge and consent of Thompson, and under promise to pay it over to him whenever he wanted it. The principal sum now claimed of $2,537, was found due by them on a settlement between Thompson and the firm in December, 1865, and when he called on them for it some time in February, 1866, they gave him their check on a Baltimore bank for $3,000, which included the $2,537 and a sum due Thompson individually. This with other checks and current notes amounting in all to about $24,000 were taken by Thompson to the National Exchange Bank, and he obtained on them from that bank a certificate of deposit for the whole amount payable to the order of the Treasurer of the United States, which he duly remitted to

that officer, and it was admitted in argument that it was received by him, was paid by the bank, and the amount thereof duly credited on the account of the collector in the office of Internal Revenue at Washington. Some days afterwards the $3,000 check of McFreely & Hopper was protested, and Thompson then from time to time made payments to the bank on account thereof until some time in April, 1866, when he paid the sum in full and the check was returned to him; these payments were wholly made by him out of other money collected by him as deputy collector of Internal Revenue. Subsequently, on the 1st of September, 1866, Thompson took from this firm their note, with two sureties, for $2,537, representing the money due the United States, and returned to them the $3,000 check, the difference between the note and the check having in the meantime been paid to him by the firm. There was proof that the firm knew at the time they received the stamps and checks for taxes they did not belong to Thompson as his private property, and that the money they received therefrom belonged to the United States and not to Thompson, but it is not pretended that any part of the funds distributed in this case can be identified as the money so received.

Whether it is possible from this transaction to make out the relation of debtor and creditor between this firm and the United States so that the debt shall be entitled to the priority, created and established by the 5th section of the Act of Congress of 1797, ch. 20, as construed by the Supreme Court in the case of *The United States vs. Blight's Assignees,* 2 *Cranch,* 358, is a question that need not now be decided, because we are satisfied that any claim the United States may have ever had against this firm growing out of these dealings with Thompson has been paid and extinguished. The check that the firm gave to Thompson for $3,000, covering the amount of the claim now in dispute, constituted part of the $24,000 paid by the bank to the Treasurer of the United States on its certificate of deposit for that amount. When the bank issued

this certificate it did so in part on the faith and credit of this check, and assumed as between the United States and itself the obligation to pay and did pay the full amount of that certificate. By this means any claim the United States may have had against this firm was paid and satisfied, and from thenceforth the bank became the creditor of the parties (drawers and endorser) to this $3,000 check, and the latter became the debtors of the bank therefor when it was protested. It can make no difference as respects the extinguishment of this claim as between the United States and this firm that Thompson subsequently used other money collected from Internal Revenue in paying the bank, and redeeming this check. This use of subsequent collections might give rise to a claim by the United States against the bank by the same process of reasoning and upon the same ground that the claim against this firm is supposed originally to have stood, but it cannot by possibility operate to revive this claim that has once been fully paid and satisfied to the United States. Nor does it matter in this respect what may have been the state of accounts between the United States and the collector at the time the certificate of deposit was issued and paid, or what application the Treasurer may have made of the money. It suffices for all purposes of this case that the money was duly paid over to and received by the United States. The order ratifying the account which rejects this claim must therefore be affirmed.

*Order affirmed.*

(Decided 2d February, 1871.)